See preceding case. 7 Biss. 426 [In re Pierce, Case No. 11,130], as to status of assignee.

## Case No. 2,286.

### CAFIERO v. WELSH.

[28 Leg. Int. 20;[1] 8 Phila. 130; 1 Leg. Gaz. Rep. 121; 3 Leg. Gaz. 21.]

Circuit Court, E. D. Pennsylvania. Jan. 12, 1871.

PAROL EVIDENCE TO VARY BILL OF LADING.

1. A bill of lading is both a receipt and contract, as a receipt it may be controlled or contradicted by parol evidence.

2. To charge the carrier with an alleged deficiency, the testimony of the parties who actually loaded the vessel is the best evidence.

3. The evidence, showing that the cargo as received, was all delivered at the port of destination: the official weight at that place is conclusive of the extent of the carrier's responsibility.

[See note at end of case.]

Appeal from the district court of the United States for the eastern district of Pennsylvania.

In admiralty. The libellant, the master of the Italian brig Matilda, signed a clean bill of lading for 4,030 cantars of brimstone, to be delivered at Philadelphia. The respondents, the consignees at Philadelphia, and the shipper's agent, claimed to deduct from the freight the value at Philadelphia of 43,180 lbs., short weight according to the bill of lading, ascertained by the custom house weight at Philadelphia, and accordingly deducted $607.22 in gold, from the freight payable by the bill of lading, for which suit was brought. The libellant's testimony showed that the cargo was taken from the warehouse on men's backs in baskets, shipped into open lighters, and taken on board the brig lying in the roads at Girgenti. The bill of lading was prepared by the shippers, and was signed by the master on shore after the cargo was laden in the merchant's office, without any knowledge of its correctness. The vessel sailed from Girgenti to Philadelphia without touching at any intermediate port, and delivered all the cargo she received to the consignees at Philadelphia. The respondents, under a commission to Girgenti, showed a weighing by the custom-house au-

[1] [Reprinted from 28 Leg. Int. 20, by permission.]

thorities, in the merchant's warehouse before shipment, but gave no details by which the accuracy of the amount stated in the bill of lading, prepared by themselves, could be tested by any of the ordinary commercial checks by which the quantity delivered to the ship could be ascertained. The cargo was laden at Girgenti at the shipper's expense. who employed the men and the lighters to put it on board the brig. The libellant proved by the testimony of himself and the officers of the brig, that the whole amount received was delivered at Philadelphia. The cargo was carried in bulk and not in packages. The hatches were never disturbed or. opened until her arrival at Philadelphia.

Morton. P. Henry, for libellant.
John Fallon, for respondents.

McKENNAN, Circuit Judge. A common carrier is bound to deliver the specific goods entrusted to him at their appointed destination, in the condition in which they were received by him, subject only to such deterioration as is necessarily incident to their transportation, and to such perils as may be by legal implication or express agreement, excepted from his liability. His responsibility begins only when he assumes the custody of the goods to be transported. Hence, the master of a vessel is responsible for his cargo from the time of its delivery to him, and only for what is so delivered. Its kind and quantity, the place to which it is to be carried, and the person to whom it is to be delivered, are subjects of proof, and of these the bill of lading is the customary and appropriate evidence. It has been expressively described as a receipt and a promise. It acknowledges that certain goods have been shipped, and engages to deliver them. While, therefore, it may be regarded as conclusively establishing the employment of the carrier, and the essential stipulations of the contract, yet, as between the shipper and the carrier, it is only prima facie evidence of all matters descriptive of the cargo, and, as to these, may be modified or contradicted by parol. 1 Sprague. 72 [The Tusker, Case No. 14,274]. "In regard to receipts, it is to be noted, that they may be either mere acknowledgments of payment or delivery, or. they may also contain a contract to do something in relation to the thing delivered. In the former case, and so far as the receipt goes only to acknowledge payment or delivery, it is merely prima facie evidence of the fact, and not conclusive; and therefore the fact which it recites may be contradicted by oral testimony. But in so far as it is evidence of a contract between the parties, it stands on the footing of all other contracts in writing, and cannot be contradicted or varied by parol. Thus. for example, a bill of lading. which partakes of both these characters, may be contradicted and explained in its recital. that the goods were in good order and well

conditioned, by showing that their internal order and condition were bad; and, in like manner, in any other fact, which it erroneously recites; but, in other respects it is to be treated like other written contracts." 1 Greenl. Ev. § 305.

In the present case, the libellant, as master of the Italian brig Matilda, contracted with C. Donner & Co., of Palermo, for the transportation of a cargo of brimstone from Girgenti, in the island of Sicily, to the port of Philadelphia. The cargo was shipped, and a bill of lading signed by the master, which recites the quantity as 4,030 cantars, equivalent to 705,250 lbs. The vessel sailed, and without touching at any intermediate port reached Philadelphia, where the cargo was again weighed by custom-house officers, and fell short of the weight stated in the bill of lading 43,180 pounds. The shippers, through the respondents, as their agents, claim to deduct from the freight the value of this deficiency; and this is the subject matter of the present controversy. The difference in the weight at Philadelphia, and as stated in the bill of lading, is too great to be explained by any allowable estimate of loss or wastage incidental to the handling or transportation of the cargo. The master is primarily accountable for it, because he accepted the shipper's weight, as the prima facie measure of his liability. But he is conclusively bound only for the quantity of lading actually received by him. If this is determinable, it is immaterial to speculate as to the cause of the discrepancy.

The only evidence to charge the master is the bill of lading, in which he acknowledges the receipt of 4,030 cantars of brimstone, and the testimony of D. Marcus Marcello, who says: "Knew that the sulphur was put on board the vessel the 13th of July, 1869, and several days previously, and was always loaded in the bay, to the amount of 4,030 cantars." If the import of this is, that the quantity of sulphur stated was actually shipped in the vessel, the witness does not inform us of his means of positive knowledge, further than that he was charged with the loading of the vessel as the agent of the charterers. That he had no responsible connection with the weighing of the sulphur, but that this office was performed by others, that he was on shore, and that the weight of the cargo was checked by a revenue officer on board the vessel, are facts which appear clearly in his deposition. His testimony, then, is not the best accessible proof of these facts, of which they are susceptible. It appears that the sulphur was in a warehouse on shore, was there weighed by D. Marco Attardo, agent of the warehouseman, supervised by the comptroller of the customs, that it was thence carried by men in baskets to small lighters, and by them two miles out to sea, where it was transferred to the vessel. Each of these lighters was furnished, on every trip, with a clearance, called a "Let Pass," which authorized the discharge of its cargo only on the Matilda, and which were surrendered to a revenue officer on board, and are preserved in the custom-house. Thus the quantity carried by each of these small vessels, the number of trips performed by each, and the aggregate quantity delivered on board the Matilda, may be ascertained at the custom-house, and are proveable by the evidence in its possession. Why this proof, of such decisive pertinency, is not furnished, is not explained. Its absence is certainly remarkable, and justifies a presumption unfavorable to the defence. But this is not the only significant omission. The weighing of the sulphur is shown to have been done by Mr. Attardo and the comptroller of the customs. As they were especially charged with this duty, the weight in detail of the several parcels, and the computation of these weights, by which the aggregate was ascertained, were peculiarly within their knowledge. Their testimony has not been taken. We are then left to find, that the quantity stated in the bill of lading was the accurate result of the weighing, and that it was actually delivered on board the vessel, upon the testimony of a witness, who is not shown to have personal knowledge of either of these facts, but who seems to have affirmed them upon information derived from those who did know them. Under such circumstances, it cannot be assumed that the bill of lading derives material corroboration from the testimony of Mr. Marcello. The bill of lading was prepared by the shipper's agent, and was signed by the master, upon the assumption that the weight of the cargo therein recited was correct. It has reference to the weight represented to have been ascertained at the warehouse, and is, therefore, to be taken as only formally admitting the quantity actually shipped. If the effect of this admission is not impaired by the absence of the demonstrative proof before referred to, it is overborne by the libellant's proofs. The libellant himself, and the first and second mates of the vessel testify, that the cargo shipped at Girgenti was put below the hatches, which were fastened down, and not opened or broken until the end of the voyage, that the vessel proceeded directly to Philadelphia, without stopping at any intermediate port, and that the whole cargo, as shipped, was delivered to the consignees. It would seem to be impossible, that so large a quantity, as the deficiency here, could have been abstracted without the knowledge of these witnesses. Their testimony then must be accepted as true, or it must be rejected as wilfully false. Making due allowance for the interest of the libellant, and the relations of the other witnesses to him, I discover no sufficient ground for imputing perjury to them, or for withholding credence from the testimony. Their statements, therefore, are to have the weight and efficacy which pertain to the testimony of unimpeached wit-

nesses. They satisfactorily establish the controlling fact, that the whole cargo, shipped at Girgenti, was delivered at Philadelphia; and so the weight, officially ascertained at the latter place is the conclusive measure of the libellant's accountability.

The decree of the district court is, therefore, affirmed.

[NOTE. The words "received in good order," "in good condition," etc., in a bill of lading, are not conclusive on the carrier. Seller v. The Pacific, Case No. 12,644; The Adriatic, Id. 90; The Howard, 18 How. (59 U. S.) 231; Bradstreet v. Heran, Case No. 1,792; Zeriga v. Pope, Id. 18,213; Rich v. Lambert, 12 How. (53 U. S.) 347; Nelson v. Woodruff, 1 Black (66 U. S.) 156; Choate v. Crowninshield, Case No. 2,691; Turner v. The Black Warrior, Id. 14,253; The Olbers, Id. 10,477; The Oriflamme, Id. 10,571. See, however, The T. A. Goddard, 12 Fed. 174. A statement in a bill of lading as to quantity is not conclusive. The Tusker, Case No. 12,274; Merrick v. 19,514 Bushels of Wheat, 3 Fed. 340; Sutton v. Kettell, Case No. 13,647; The J. W. Brown, Id. 7,590; The Saragossa, Id. 12,336; Carao v. Guimaraes, 10 Fed. 783; Manchester v. Milne, Case No. 9,006; Manning v. Hoover, Id. 9,044; Goodrich v. Norris, Id. 5,545; McCready v. Holmes, Id. 8733. But see Backus v. The Marengo, Id. 712.]